439 So.2d 598 (1983)
STATE of Louisiana
v.
Lilton F. JONES.
No. 83 KA 0085.
Court of Appeal of Louisiana, First Circuit.
October 11, 1983.
*599 J. Kevin McNary, Asst. Dist. Atty., Covington, for appellee.
Wendell Tanner, Slidell, for defendant-appellant.
Before PONDER, WATKINS and CARTER, JJ.
PONDER, Judge.
Defendant was indicted for second degree murder, a violation of La.R.S. 14:30.1. He was convicted of manslaughter and sentenced to nine years imprisonment. La.R.S. 14:31. Defendant appealed and assigned two errors. We affirm.

ASSIGNMENT OF ERROR NUMBER ONE
Defendant's first assignment of error is that the trial court allowed the State to ask leading questions of its witness, Gloria Marie Price, sister of the victim, Jesse McMillan.
The questions to which defendant objected were whether Price saw her brother get stabbed, whether her brother attacked the defendant and whether she saw anyone in the area with a gun. Each time, Price answered the question before an objection was made. The court sustained the first objection, but stated that the witness eventually might have to be led. The subsequent objections were overruled.
Leading questions to one's own witness are ordinarily prohibited, unless the witness is unwilling or hostile. La.R.S. 15:277.[1] Exceptions can also be made with children or with ignorant or confused witnesses who would not otherwise understand the information sought. State v. Bolton, 408 So.2d 250 (La.1981).
The matter, nevertheless, is largely within the discretion of the trial court and only a clear abuse of that discretion, which prejudices defendant's rights, will justify *600 the reversal of a conviction. State v. Felde, 422 So.2d 370 (La.1982); State v. Vanderhoff, 415 So.2d 190 (La.1982).
Defendant concedes that the State was having difficulty in obtaining coherent testimony from Price, but argues that defendant's rights were prejudiced. We disagree. Even if the questions were leading, defendant has shown no actual prejudice.
Defendant's first assignment of error is without merit.

ASSIGNMENT OF ERROR NUMBER TWO
Defendant's second assignment of error is that the trial court allowed the State to impeach its witness, Felton Cousin, improperly.
During his testimony at trial, Cousin stated that McMillan reached for a gun in his waistband immediately before being stabbed. The assistant district attorney asked Cousin whether he remembered talking to Detective Edward McGehee at the sheriff's office two days after the stabbing. He stated he did and remembered giving a statement.
Defense counsel objected that a proper foundation to impeach the witness by a contradictory statement had not been laid. After discussion, outside the presence of the jury, the court permitted the State to continue questioning to lay the foundation for impeachment. Cousin stated that in his statement he did not mention that McMillan had a gun. When asked why, an objection was made and overruled. Cousin stated he only answered those questions asked of him.
In his statement, Cousin omitted the significant fact that he saw the victim reach for a gun. At the end of his statement, when asked if he had anything to add, Cousin replied he did not. The testimony at trial was damaging and surprising to the State. La.R.S. 15:487 and 15:488.[2]State v. Boyd, 359 So.2d 931 (La.1978).
Defendant contends the State should have been limited to eliciting from the witness only the fact that he made a prior statement.
The purpose of the foundation required for the use of a prior inconsistent statement is to obviate surprise, to let the witness either deny or explain the inconsistency.[3]State v. Heard, 408 So.2d 1247 (La. 1982).
The purpose of the statute was substantially fulfilled and a sufficient foundation was laid. The impeachment was limited to reading the prior inconsistent statement and allowing Cousin to explain the discrepancy between the statement and his trial testimony.
This assignment of error is without merit.
For these reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] La.R.S. 15:277:

A leading question is one which suggests to the witness the answer he is to deliver, and though framed in the alternative, is inadmissible when propounded to one's own witness, unless such witness be unwilling or hostile.
[2] La.R.S. 15:487:

No one can impeach his own witness, unless he have been taken by surprise by the testimony of such witness, or unless the witness show hostility toward him, and, even then, the impeachment must be limited to evidence of prior contradictory statements.
La.R.S. 15:488:
"Surprise" in the sense of the last preceding article does not arise out of the mere failure of the witness to testify as expected, but out of his testifying upon some material matter against the party introducing him and in favor of the other side.
[3] La.R.S. 15:493:

Whenever the credibility of a witness is to be impeached by proof of any statement made by him contradictory to his testimony, he must first be asked whether he has made such statement, and his attention must be called to the time, place and circumstances, and to the person to whom the alleged statement was made, in order that the witness may have an opportunity of explaining that which is prima facie contradictory. If the witness does not distinctly admit making such statement, evidence that he did make it is admissible.